21-1044 Mr. Angelino. May it please the court. My name is Blake Angelino. I represent the appellate. This case is about bad lawyers. Robert Lee-Kendrick and Wisconsin courts that unreasonably applied the familiar Strickland standard ignoring the obvious gravity of Robert Lee-Kendrick's prior counsel's errors. Kendrick was tried for sexual assault in Wisconsin and subsequently convicted. Trial was a credibility contest with no physical evidence whatsoever. This court refers to cases like this as battles of credibility because credibility is the only thing that matters. As a result, all Kendrick's trial counsel needed to do was undermine the credibility of the state's witnesses. That was his entire job. He inexplicably chose not to. The witness counsel did not call was Kendrella Keeler who would have testified that the story put forth by the prosecution's witnesses was a lie. Further, perhaps worse, Kendrick's prior counsel did not even investigate Keeler as a potential witness. Well, the state public defender's office did investigate by getting a statement from her, but then the counsel chose not to call her. Is that correct? There is. So there are two things. There is no evidence in the record that counsel after Kendrick's original counsel did any investigation into Keeler, and in fact, the statement that you're referring to says exactly that, that no lawyers after his original counsel had contracted Keeler to determine whether she would have been an appropriate witness or what she would have said at trial. Because it's problematic for the lawyer to have to have that conversation because then the lawyer, him or herself, would become a witness if they took the statement. That's why they had the investigators do it here. Your argument goes more to the second lawyer's. Any record made with regard to the second lawyer's interaction with Keeler? Is that right? Sure. So in this case, an attorney named Robert D. Arruda was originally appointed to represent Robert Lee Kendrick, and Kendrick originally entered a plea deal. The court allowed that plea to be revoked because Robert D. Arruda was found to be ineffective as counsel. His second counsel, and subsequently his post-conviction counsel, there's no evidence that either of them contacted Keeler to determine if she was going to be an appropriate witness at trial. Presumably, that file, the Daruda file, would have gotten to the new counsel, correct? Presumably, that is true. Do we have in the record an affidavit from Ms. Keeler as to what, that is, her firsthand account? Absolutely. Yes, sir. Yes, Your Honor. And where do we find that? The firsthand account of Kendrella Keeler is contained in the investigative report, which I believe is that, but I will need to double check this. This is a report of an interview? Of the original interview in 2009. No, no, no, no, no. My question is, do we have today an affidavit from her, sworn statement about what she would have said? We do not. However, I will note that the investigative report closes with Keeler saying she would sign an affidavit saying exactly that. Okay, that's fine. We do not have an affidavit, though. Mr. Angelino, let me go ahead and get to the heart of one of the procedural issues. What is your best argument for avoiding the procedural default that seems to have been found by the Wisconsin Court of Appeals in paragraphs 11 and 12 of its opinion? Our best argument that this case has not been procedurally defaulted is that the Escalona and Naranjo Bar does not apply because Robert Lee Kendrick's counsel was ineffective, and so there are a few components to this. First, the bar does not apply where Kendrick stated the who, what, when, where, why regarding the witness, the credibility witness that wasn't called, which he did in his section 974.06 motion, but even if this court were to find that the Escalona-Naranjo Bar did apply there, Kendrick has shown both cause and prejudice resulting from his ineffective assistance of counsel, and so this court should ignore the Escalona-Naranjo Bar. Well, let's unpack those two steps, okay? The first step, the Escalona Bar, the court says he in essence identified the issue, but because it was, as I understand the reasoning, because it was an appellate issue he was basically making, raising, he had to go through the comparison of the relative strength of the issues that were actually raised as compared to the issue that he says should have been raised, right? Yes, sir. Okay, what's wrong with that conclusion as a matter of Wisconsin state law? As a matter of Wisconsin state law, Robert did present this as an issue, and while he may not have directly compared the relative strength of the arguments that were made by his post-conviction counsel, it would still remain true even if he hadn't compared the Okay, sorry, you're jumping to the second step. Okay, so first step, you've got two arguments that you're making, right? One is that the state court was wrong on Wisconsin law, the way it applied Escalona, right? Yes. Okay, that's a tough argument to make, and it's hard for a federal court to say state court was wrong about state law about this. If they say that kind of comparison is necessary, unless you've got a way to say there's something kind of freakish or unpredictable about the way that was applied, that probably stands. So then we get to cause and prejudice as the escape vows, so let's unpack those, okay? Okay. This court should ignore the Escalona-Nerano bar because Robert Lee Kendrick's prior counsel did not call Kendrilla Kaler and did not investigate her as a witness. We see that as an issue because as Seventh Circuit case law pretty clearly establishes that failing to investigate a potential exculpatory witness or a potential witness at trial is an inexcusable error, and in this context, the analysis is fairly similar to the Strickland analysis in that the court needs to dig into the ineffective assistance of counsel to truly determine whether there was cause and prejudice to ignore the Escalona-Nerano bar. Okay. My question, let me try to sharpen it a little bit because I understand your point on the merits, and we've got plenty of cases, as you note, that indicate that this could be a big problem in performance, but the cause and prejudice, as I understand it, the cause we're supposed to look for is cause for the procedural default, right? Yes, Your Honor. Okay. So what's the cause for Lee Kendrick's failure to comply with the Escalona requirements in the 974-06 procedure, as to which, as I understand it, he's not entitled to counsel? The cause for that, for Robert Lee Kendrick's failure to compare those two things, really emanates from, let me back up. To show cause and prejudice, what Weber was required to show was that the argument was that was not made was obvious and clearly stronger than the ones that prior counsel did raise, and so in that respect, Robert Lee Kendrick did show, by presenting this argument, that it was obviously stronger on its face than any of the arguments that his other counsel, that his prior counsel had raised. And this brings us back to the refrain that this was a battle of credibility, and that the facts and the merits here are really important because we can't look at cause and prejudice or the Strickland standard unless we discuss what the standard was in the trial court and later post-conviction motions. And here, it all emanates from the same common nucleus of operative fact, and that is that his prior counsel failed him, failed to call a credibility witness in a credibility contest. One of the two claims, I understand, that was made on direct appeal was a failure to adequately impeach a couple of the accusers. Isn't the role of the Keillor evidence here more secondary than that? It wouldn't be a direct impeachment because Keillor wasn't present at the time of the sexual assaults. Rather, Keillor would have been able to go to context about A.W.'s testimony. How is that clearly stronger than the claims raised on the direct appeal? So there's a difference between Robert Lee Kendrick presenting evidence in his own defense and then adding a witness to trial. That's night and day, whereas it would add a corroborating witness or at least someone who would present in his favor that those witnesses were lying. It does not simply come down to impeachment. This entire case had no physical evidence. And while there was no—you're correct in the Wisconsin Court of Appeals calls attention to their—in their reasoning to the fact that Keillor did not have firsthand knowledge. The first issue with that is that Keillor said that—Keillor would have said that that didn't happen. And you can't truly have firsthand knowledge of something that didn't happen. But what it really comes down to is that Keillor would have said these witnesses were lying. And in a credibility contest, what the court at trial was trying to determine, did something happen or did something not happen? And at every step along the way at trial, the Court of Appeals and even the district court, the courts have acknowledged that this was a credibility contest and that the only thing that happened is—the only thing that mattered was, were these witnesses believable? If the witnesses were believable, Kendrick should have been convicted. If Kendrick was believable, Kendrick should have been acquitted of these charges. Every step along the way agreed with that point. And that's why these witnesses were—that's why Keillor was so crucial. Because that's exactly what her testimony would have presented to the court. She didn't exactly say A.W. was lying, right? What she said, according to the reports that we have to credit, at least at this point, is that she said she was going to get Lee Kendrick in trouble by any means necessary, right? She said that she was going to get Lee Kendrick in trouble by any means necessary, and it is more than her inference that she was told that by any means necessary meant lying. The words, I am going to lie, were not said, but in this case, Keillor clearly states, I think she was lying, and that her inference was, get him by any means necessary meant lying. And this conversation reportedly happened the day that Lee Kendrick was arrested, is that right? Yes. Do we know whether A.W. had spoken to the police before then? I believe she had. Okay, I would think so, yeah. Okay, do you want to save the rest of your time for rebuttal or wrap up? Yes. Okay, all right. Thank you very much, Mr. Angelino. And for the state, Ms. Bice. May it please the court, my name is Sonya Bice, and I represent the respondent. This claim that is at issue on appeal is procedurally defaulted. The Magistrate Judge Joseph erred in reaching the merits on this case. Can you speak up a little bit? Yes, sir. Thank you. This claim is procedurally defaulted, and Magistrate Judge Joseph erred in disregarding that procedural default. Garcia made this court's decision in Garcia v. Cromwell. The recently decided case made what was a straightforward analysis even more straightforward. Garcia's analysis can lay an almost perfect template for the court's decision in this case. The state court, there as here, decided that the petitioner had failed to satisfy the Romero-Giorgiana pleading standard that implemented the Escalona procedural regime. As this court in Garcia said, it was up to petitioner under Allen and Romero-Giorgiana to trigger the exception to that procedural bar, and he didn't. The same is true here. The court of appeals, the state court, decided in paragraph 11 he did not compare the claims that he made or that he was wishing to raise with those actually raised by his post-conviction counsel, and that was a fail. That was the reason that he was barred, and Garcia made clear it isn't new. This is the first time this court said it, but that such a decision by a state court is adequate and independent state law grounds. That means it is a procedural default, and Lee Kendrick is not entitled to habeas review unless he can show cause, unless he identifies an external factor. I'm quoting from page 19 of the slip opinion of Garcia. He has to identify an external impediment that prevented him from satisfying the Romero-Giorgiana pleading threshold necessary to obtain relief from the Escalona neuronal bar. He has not done so. The Garcia decision does the analysis much more precisely, frankly, than I did in my brief. I got off track in the cause analysis. The cause, as Judge Hamilton referred to, is what he has to show as cause for his default, for his failure to plead and satisfy the Romero-Giorgiana standard. Does he have a right to counsel in 974.06? No, Your Honor. Later collateral challenge. That's a, I mean, I know it's not our business, but that's a pretty tough pleading standard for pro se prisoners, right? Yes, sir. Particularly, I mean, Lee Kendrick, as your friend pointed out, did identify the specifics of the ineffective assistance, and it's not that hard for courts to do the comparison. Your point is well taken, Your Honor. Garcia held what it held, and until otherwise, I understand I'm entitled to rely on that. That is an adequate and independent state law ground. It was a Wisconsin case. It was applying the same standard that Mr. Lee Kendrick is held to. Do you agree that the Wisconsin Court of Appeals apparently applied the incorrect standard in its paragraph 17, where it wrote, even if a jury believed Keillor's testimony that A.W. had made such a statement, it would not, contrary to Lee Kendrick's belief, necessarily have had to conclude that A.W. was expressing a motive for fabricating allegations. What I'm concerned about is the jury wouldn't necessarily have had to agree with that. That's hard for me to reconcile with the Strickland standard. I believe that the court worded that differently than I believe it should have. I believe that what the point was it was making is if you look actually at the investigator's report about what Kendrilla Keillor said, she says, I don't believe her, I don't believe that she should have lied on him, she messed up his life, and so forth. She said that she was going to tell the police, and I'm sorry, my she's are confusing. Keillor said that A.W. told her she was going to tell the police she wanted Lee Kendrick out of her mother's life, and then she was going to tell the police that he'd been having sex with her since she was 12. She said she was going to do so by any means necessary. I believe what the language you identified in the Court of Appeals opinion is getting at is the where's the lie. Those things can all well be true. There is no affidavit from Keillor in the record. There is no affidavit from either lawyer in the record, and there is no evidentiary basis to make a decision on the merits here, and that is because the Wisconsin courts held that Mr. Lee Kendrick had not satisfied the threshold for obtaining an evidentiary hearing. And you agree that 2254I is not a bar here, correct? Yes, Your Honor. All right. I'll just note that it's helpful that both parties have agreed on that. It may make sense here for us to get a precedential opinion out to that effect regarding the standards so people don't have to keep briefing. Yes, that would be greatly appreciated. You do a lot of things, I take it. Okay. My point is merely the takeaways from Garcia are, you know, I was pretty much standing up and cheering as I was reading each paragraph of this written by a judge who knows Wisconsin procedural post-conviction procedure very well, of course, and it speaks our language. In Wisconsin criminal procedure and sets forth very clearly that as it is indistinguishable up until the cause, I mean obviously on the facts determining the cause, we have a 97406 motion, and the court held that he had failed to make the factual allegations showing that they were clearly stronger. Also here the district court, the magistrate judge rejected our procedural bar arguments on the grounds that the grounds that, as you alluded to, Mr. Lee Kendrick was pro se, and on the grounds that the parties had briefed the merits. None of those grounds are reason to disregard the procedural bar. The district court was not allowed to disregard this procedural bar. This court has held that where state court decides both procedural, denies a claim on procedural grounds and also said, well, you would also lose on the merits, the procedural bar is determinative, and that was not within the district court's purview to disregard that procedural bar. Nevertheless, I've rarely tried to discourage and as a district judge often tried to do myself, let's cover all the bases. Yes, Your Honor, and it really only creates a problem as when the district court said, oh, well, everybody else addressed the merits, we might as well reach the merits. That's where it goes off the rails a bit because, of course, we would rather have the state courts, I mean, in my view, handling records on these things, have the state courts say, even if we get this procedural ruling wrong, here's our decision on the merits. That's a much better record for me to work with, and so I'm not saying that there was any problem with that, reaching the merits, as long as we always want the state courts to say this is the procedural default, he loses here on this because he failed to satisfy the standard. If there are no further questions, I would like to conclude. All right. Thank you very much, Ms. Bice. Mr. Angelino, rebuttal.  Briefly, in response to the Garcia case, opposing counsel did not argue in any of their briefing that the reason that this case is procedurally defaulted is because Kendrick failed to meet the Romano-Giorgiano pleading standard that was new as of just a week ago through reference in a Rule 28J letter, and that issue being waivable, this court should ignore that argument entirely. Second, I'll briefly direct the court to Docket 31, Exhibit 14, which is where Kendrick argued that his prior counsel was ineffective for failing to call and investigate Keillor. That argument, in comparison to the strength of the others, is obvious on its face. As Your Honor mentioned a moment ago, that's a very easy analysis for the court itself to make, and no direct comparison should be needed, especially here where the relative strength is obvious. If you bear with me a moment, Mr. Angelino, but looking at the state's brief, the adequate and independent state law ground is briefed starting at page 26. What's missing that you think was waived? That the reason that, the argument that was not made was that Robert B. Kendrick did not plead pursuant to the Romano plea being included in his 974.06 motion, did not plead pursuant to the Romero-Giorgiano standard, and that it's defaulted because he did not say the who, what, where, when, why. That argument itself was not made. You're right, you are entirely correct that the state did argue that it's adequate and independent state law grounds, but they certainly did not argue that Robert, that Kendrick failed to plead it. Okay. All right. Thank you very much, Mr. Angelino. The case will be taken under advisement.